UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　Plaintiff,<br>　　v.<br>MARTIN BARRAGAN,<br>　　　　Defendant. | Case No.  99-cr-20143-BLF-4<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT**<br>[RE ECF 288] |

　　　　More than 15 years ago Martin Barragan was indicted for possession of methamphetamine with intent to distribute and conspiracy to possess methamphetamine with intent to distribute.  He was arrested on January 13, 2013.  Mr. Barragan now seeks to dismiss the indictment claiming a violation of his right to a speedy trial guaranteed by the Sixth Amendment.

　　　　On June 2, 2015, the Court heard argument on Defendant's Motion to Dismiss.  The Court offered the parties the opportunity to have an evidentiary hearing on any factual issue in dispute.  Further, the Court indicated that it was prepared to consider the motion in light of the Government's efforts to locate and arrest Mr. Barragan and Mr. Barragan's knowledge of the charges and conduct from the date of the indictment until 2004 separately from the evidence regarding the entire 15-years lapse of time.[1]

　　　　The parties advised the Court that as to the period 1999 to 2004, the matter would be submitted on the papers and neither party requested an evidentiary hearing.  The facts are not in dispute as to that period of time.  As set forth in detail below, under *Doggett v. United States*, 505 U.S. 647 (1992), the Court determines that Mr. Barragan's Speedy Trial right was violated prior to

---

[1] There is a factual dispute as to whether Mr. Barragan was aware of the indictment as of April 2004 which would require an evidentiary hearing.

the Government's efforts in 2004 to locate and arrest Mr. Barragan and thus the motion is GRANTED.

I.   **BACKGROUND**

On August 31, 1999, Martin Barragan allegedly participated in an effort to sell methamphetamine to a confidential informant posing as an interested purchaser. Indict. of Barragan, ECF 293-1. Five others participated in this effort to sell methamphetamine, including Mr. Barragan's brother, Gilberto Barragan ("Gilberto"), and cousin, Efrain Barragan ("Efrain"). *Id.* Law enforcement agents attempted to locate Mr. Barragan on the day of the attempted sale at 2118 Addison Avenue in East Palo Alto, an address agents understood to be associated with Mr. Barragan. Rubino Decl. ¶ 7, ECF 293-2. There is no record that law enforcement agents conducted a DMV check to obtain this address, although the record shows that Mr. Barragan possessed a California Driver's License as of September 20, 1997. Mot. Exh. D, Cal. Driver's License, ECF 288-6. Mr. Barragan was not at the Addison address, but his brother, Gilberto, was. Rubino Decl. ¶ 7. Law enforcement arrested Gilberto after searching the home and finding methamphetamine. *Id.* Both Gilberto and Efrain were convicted of drug crimes and sentenced in 2001. Mot. Exh. A-2. Report of Invest., ECF 290-1. Mr. Barragan was aware that his brother and cousin were arrested in 1999 for unlawful drug related activity. Barragan Decl. ¶ 20, ECF 288-1.

On September 14, 1999, Mr. Barragan was charged with conspiring to possess methamphetamine with intent to distribute and possession of methamphetamine with intent to distribute. Indict., ECF 293-1. Following Mr. Barragan's indictment, an arrest warrant was issued and the Government entered the warrant into the National Crime Information Center ("NCIC"). Rubino Decl. ¶ 9. On September 27, 1999, the Drug Enforcement Agency ("DEA") transferred the search for Mr. Barragan to the United States Marshals Service ("USMS"). *Id.* The DEA continued to "monitor the case and intermittently conduct data base inquiries." *Id.* According to DEA Special Agent Rubino, the DEA conducted database checks with NCIC, California Law Enforcement Telecommunications System ("CLETS"), El Paso Intelligence Center ("EPIC"), and Lexis/Nexis. *Id.* at ¶ 10. Supervisory Deputy United States Marshal Harwell states that the USMS made annual database checks. Harwell Decl. ¶ 5, ECF 293-3. Between Mr. Barragan's

indictment in September 1999 and March 2004, the Warrant Activity Sheet shows only two NCIC database checks regarding whether new information concerning Mr. Barragan's whereabouts had surfaced—one on February 7, 2002, and one on January 8, 2003. Mot. Exh. A-1., NCIC Check, ECF 290-1. During this time, Mr. Barragan worked in the Bay Area and received workers' compensation benefits in 2003. Barragan Decl. ¶ 6. He also lived at the same residence on Illinois Street in East Palo Alto between 1999 and 2003. *Id.* at ¶ 5. Mr. Barragan also maintained a driver's license or state identification card during this time. *Id.* at ¶ 19.

Commencing in April 2004, the Government initiated intense efforts to locate Mr. Barragan, including contact with his family at two known addresses, surveillance of those locations and contact with family members seeking his whereabouts and requesting that Mr. Barragan contact the officers. Caverly Decl. ¶¶5-6, ECF 293-4. In fact, Mr. Barragan admits that as of March 25, 2004, he became aware that law enforcement was looking for him. Barragan Decl. ¶11. Mr. Barragan further admits that he contacted an attorney regarding the law enforcement visits to his home. Barragan Decl. ¶12. In fact, Deputy Caverly received a phone call from attorney Anthony Gibbs in late April, 2004 wherein Mr. Gibbs indicated that he had not yet been retained, but if retained he would be willing to discuss Mr. Barragan's self-surrender. Caverly Decl. ¶7. Mr. Gibbs declined to provide contact information for Mr. Barragan. *Id.*

In August, 2004, the Government made further attempts to locate Defendant at his place of employment. Caverly Decl. ¶10. These efforts failed. Mr. Barragan had enlisted his brother to pick up his last paycheck through the use of a power of attorney. Caverly Decl. ¶¶9-10. In November, 2004, Deputy Caverly left the San Jose office. Thereafter, efforts to locate Mr. Barragan reverted to yearly records checks. Harwell Decl. ¶7. Mr. Barragan was ultimately arrested and taken into federal custody when the USMS learned that he was in state custody in January, 2013. Harwell Decl. ¶7.

**II.     LEGAL STANDARD**

"The Sixth Amendment guarantees that, in all criminal prosecutions , the accused shall enjoy the right to  a speedy trial." *Doggett v. United States*, 505 U.S. 647, 651 (1992).  Not all delays violate the Sixth Amendment.  To determine whether a delay does violate the right to a

3

speedy trial, the court is required to balance four factors enunciated by the Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 530 (1972), including 1) length of delay, 2) the reason for the delay, 3) the defendant's assertion of his speedy trial right, and 4) prejudice to defendant.

**III. DISCUSSION**

    **A. Length of Delay**

First, the Court must determine whether the delay was uncommonly long. The time is measured from the time of the indictment to the time of the trial. *United States v. Gregory*, 322 F.3d 1157, 1162 (9th Cir. 2003). In this case, the entire period is more than 15 years. For purposes of this motion, the Court first considers the period of time from indictment in September 1999 to March 2004 when the USMS conducted a brief intensive investigation. That period of time was 54 months.

Defendant argues that regardless of the efforts made by the Government in 2004 and regardless of Mr. Barragan's conduct and knowledge of the indictment in 2004 and thereafter, his right to a speedy trial had already been violated.[2] He further submits that he lived openly in the Bay Area throughout the time period. Barragan Decl. ¶¶5-6. The Court agrees. Once Mr. Barragan's speedy trial right was violated, the Government is not entitled to cure the violation with a frenzy of activity after a long dormant period. Thus, the Court reviews the facts during the period September 14, 1999, to March, 2004. Stated differently, even if Mr. Barragan had been arrested in April 2004, his speedy trial right would already have been violated.

In evaluating the length of the delay, the Supreme Court in *Doggett* directs a two part inquiry. First, the defendant must establish that the period of time passes a threshold point dividing the ordinary from the presumptively prejudicial delay to trigger the full *Barker* analysis. Courts have found that post-accusation delay is "presumptively prejudicial" as it approaches one year. *See Doggett*, 505 U.S. at 651-52. In this case, the delay long ago passed the threshold mark of one year, and even by March 2004, the delay had persisted for four and one-half years. The Government concedes that the 160 month delay up until the time of the arrest is sufficient to

---

[2] Defendant submits that even after law enforcement contact with his family in 2004 he was unaware of the indictment until his arrest in 2013. Barragan Decl. ¶ 4. This fact is disputed.

4

1  trigger the *Barker v. Wingo* inquiry. At the hearing, the Government did not contend that the 54

2  month delay was insufficient to trigger the inquiry. The court need not determine exactly when

3  the delay crossed the line since the 54 month delay is without a doubt well beyond any reasonable

4  argument. *United States v. Beamon*, 992 F.2d 1009, 1013 (9th Cir. 1993). Thus, the Court finds

5  that the 54 month delay was "presumptively prejudicial" to invoke consideration of the *Barker*

6  factors.

Next, the Court considers the extent to which the delay exceeds the threshold point in light

8  of the degree of diligence by the Government and acquiescence by the Defendant to determine

9  whether sufficient prejudice exists to warrant relief.

### B.     Reason for the Delay

The second *Barker* factor requires the Court to inquire into the reason for the delay.

Defendant asserts that the Government was negligent in its attempt to locate and arrest him. Mot.

at 8-10. He asserts that on the day of the drug transaction, August 31, 1999, when other family

members were arrested, the Government made some effort to locate Mr. Barragan, but after the

indictment was filed, there was precious little activity.

The Government argues that it was diligent. After the indictment issued on September 14,

1999, an arrest warrant was issued and the Government immediately entered Defendant's arrest

warrant into NCIC system. Rubino Decl. ¶ 9. On September 27, 1999, the matter was officially

transferred to the USMS for investigation of Defendant's whereabouts. *Id*. The DEA also

continued to "monitor the case and intermittently conduct data base inquiries." *Id*. DEA Special

Agent Rubino states that DEA continued to regularly conduct database checks with NCIC,

CLETS, EPIC and Lexis/Nexis without success. *Id*. at ¶10. The USMS made annual database

checks. Harwell Decl. ¶5. The Warrant Activity Sheet shows database checks once in 2002 and

2003. Def. Ex. A-1, p. 11.

Missing from the Government's activity was any follow-up at known addresses for Mr.

Barragan. The August 1999 pre-indictment arrests of co-defendants produced information about

Mr. Barragan's possible whereabouts, but there is no indication of any follow-up until March

2004.

5

1    The Government argues that its efforts were reasonable under the circumstances. It relies
2    on its 2004 activity and gives scant attention to the deficits in its investigation during the 54
3    months preceding Deputy Caverly's intensive, albeit short-lived, efforts in March –August, 2004.
4    The Government offers no explanation why its surveillance efforts and personal contact with
5    Defendant's family members were not instigated within the first year after the indictment was filed
6    The record shows that the Government could have learned of the Illinois Street, East Palo Alto
7    address in 1999 had it run a DMV check on Defendant.

8    The Government's reliance on *United States v. Aguirre*, 994 F.2d 1454 (9th Cir. 1993) is
9    not helpful. In *Aguirre,* it was undisputed that the defendant was aware that the authorities were
10   looking for him. Thus, delay in that case could be attributed to the inevitable consequences of a
11   defendant who goes into hiding. *Id.* at 1456-57. In this case, it is undisputed that prior to Deputy
12   Caverly's contacts with Defendant's family in March 2004, Mr. Barragan was not aware that there
13   were charges pending against him. The most the Government could muster on this point was that
14   he was aware that his relatives were arrested. That alone is not sufficient to demonstrate
15   knowledge of the indictment against him.

16   The Court finds that although the Government did expend some effort to locate Mr.
17   Barragan, many obvious and routine measures were overlooked. DMV checks, surveillance at
18   known addresses, such as Deputy Caverly did in 2004, and follow-up contact with relatives in the
19   early years would have been reasonable measures. As the record shows, Mr. Barragan lived
20   openly in the Bay Area throughout the time in question. In fact, he lived at the Illinois Street, East
21   Palo Alto address until 2003. Barragan Decl. ¶ 5. Defendant worked in the Bay Area and
22   received workers' compensation benefits in 2003. Barragan Decl. ¶ 6. He maintained a driver's
23   license or state identification card throughout the period. Barragan Decl. ¶ 19. Having turned up
24   no useful information through its annual database checks and having neglected to broaden the
25   investigation to include contact with known family members, DMV checks and state public
26   benefits records, which would have led to finding Mr. Barragan promptly, the Court finds that the
27   Government was negligent in its efforts between 1999– 2004. *See Beamon,* 992 F.2d 1009 (9th
28   Cir. 1993) (Appellate Court upholds District Court finding that "both defendants should have been

1    found if a serious effort had been made to find them" where defendants were living in the open
2    and the government did not try other means easily available to it when merely stopping by
3    defendants' house on several occasions was unsuccessful).  Thus, the Court finds that the
4    Government was negligent in its investigation and the Government is more to blame for the delay
5    than the Defendant.

### C. Whether in Due Course Defendant Asserted His Right to a Speedy Trial

As discussed above, there is no evidence that Mr. Barragan was aware of the indictment before 2004.  He states in his declaration that he was unaware of the charges until his arrest in 2013.  Barragan Decl. ¶ 4.  Defense counsel promptly advised the Court after his arraignment that he was investigating grounds for this motion.  Thus, Mr. Barragan cannot be faulted for contributing to the delay.  *See Doggett*, 505 U.S. at 653.

### D. Whether Defendant Suffered Prejudice as a Result of the Delay

Having determined that the cause of the delay was attributable to the Government's negligence, the Court turns to the final *Barker* factor regarding prejudice to the Defendant.  The Supreme Court's ruling in *Doggett* guides this Court's analysis of the prejudice factor.  *Doggett*, 505 U.S. at 657-58.

The Court is required to weigh the reasons for and the extent of the delay against the evidence of actual prejudice.  Clearly, the primary concern is that the delay will cause prejudice by impairing the defendant's opportunity to garner and present a defense not impaired by "dimming memories and loss of exculpatory evidence."  *Barker*, 407 U.S. at 532.

The Government argues that even if the delay is attributed to it, the delay is not so long as to eliminate the need for the Defendant to show some actual prejudice.  Opp. at 16.  For this argument, the Government relies on *Beamon* where the Ninth Circuit found that delays of 17 and 20 months were not so great or substantial as to relieve the defendants of their burden to show actual prejudice.  *Id*.  The Court disagrees.  This 54 month delay is wholly unlike a 17 or 20 month delay.  It is four and one-half times greater than the presumptive threshold of one year and far more than double the period of delay considered in *Beamon*.

As the Ninth Circuit instructs, due to the concerns of the effects of prejudice on the

defendant, "no showing of prejudice is required when the delay is great and attributable to the government." *United States v. Mendoza*, 530 F.3d 758, 764 (9th Cir. 2008) (citations omitted). Instead, prejudice is presumed and intensifies over time. *Id.* Where, as here, Defendant is not responsible for the delay and the delay is lengthy, prejudice is presumed in favor of Defendant and the burden shifts to the Government to rebut the presumption. *Doggett*, 505 U.S. at 655.

The Government offered no evidence to rebut the presumption of prejudice brought on by the uncommonly long delay caused by its negligence. Under these circumstances, the Court finds that the Government has not rebutted the presumption that the delay has prejudiced Defendant's ability to present a defense.

## IV. ORDER

After balancing the *Barker* factors, the Court finds that the 54 month delay in arresting Mr. Barragan violated his Sixth Amendment right to a speedy trial. Government efforts over a six month period in 2004 did not cure the violation and Mr. Barragan's post-March 2004 conduct and knowledge of the indictment, if any, would not have reversed the prejudice already incurred by the Government's negligence over the preceding 54 months. On this basis the Motion to Dismiss the Indictment is GRANTED.

The Court HEREBY ORDERS that this case, 5:99-cr-20143-BLF-4, be dismissed.

The Court FURTHER ORDERS that Mr. Barragan be released from the custody of the United States Marshals Service solely with respect to this case, 5:99-cr-20143-BLF-4.

Dated: June 5, 2015

_____
BETH LABSON FREEMAN
United States District Judge